COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-18-00190-CR |
| Appellant, | § | Appeal from the |
| v. | § | Criminal District Court No. One |
| TIMOTHY WEST, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20180D03392) |
| | § | |

**O P I N I O N**

In this case, the State of Texas appeals the trial court's order granting a motion to quash the State's third indictment against Appellee Timothy West based on a ruling that the State had filed its indictment outside the statute-of-limitations period. In ruling, the trial court determined that the State's two earlier indictments did not toll the statute of limitations applicable to the subsequent indictment because the earlier indictments had not alleged the "same conduct, same act, or same transaction," as required for tolling purposes, pursuant to the standard established by the Court of Criminal Appeals in *Hernandez v. State*. *See Hernandez v. State*, 127 S.W.3d 768, 774 (Tex. Crim. App. 2004). The issue presented in this appeal is whether an original indictment that charges three counts of possession or attempted possession of a controlled substance, to-wit: tramadol, by misrepresentation, fraud, forgery, deception or subterfuge, on three separate dates,

alleges the same conduct, act, or transaction, as a subsequent indictment that charges the same conduct in the same manner except that the controlled substance identified by the charges is not tramadol but oxycodone. Because we conclude that the prior and subsequent indictments alleged the same conduct and shared the same factual basis, we reverse and remand.

## BACKGROUND

On September 13, 2016, the State indicted West for three counts of knowingly possessing or attempting to possess a controlled substance, to-wit: tramadol, by misrepresentation, fraud, forgery, deception, or subterfuge, on or about the dates of January 21, 2015, April 2, 2015, and June 5, 2015, respectively, for each count alleged (the first indictment). Thereafter, the State re-indicted West wherein it changed the controlled substance to oxycodone (the second indictment) and, for this reason, dismissed the first indictment pursuant to a motion to dismiss granted by the trial court on June 13, 2018. But the second indictment was later dismissed pursuant to a motion to quash due to the State's failure to also include a tolling paragraph. Thereafter, the State again re-indicted West on June 26, 2018, for three counts of knowingly possessing or attempting to possess a controlled substance, to-wit: oxycodone, by misrepresentation, fraud, forgery, deception, or subterfuge, on the same dates as alleged in the first indictment, except that as compared to the second indictment, the third indictment included identical tolling paragraphs to each count (the third indictment).

Again, West filed a motion to quash the third indictment. In his motion, West contended that the third indictment was barred by the statute of limitations for the charged offense and that the tolling rules did not apply because the first and third indictments did not allege "the same conduct, act or transaction." After a hearing on the motion—at which both parties argued

2

competing applications of *Hernandez v. State* to the question of whether the first indictment tolled the limitations period for the third indictment—the trial court granted West's motion to quash. The State then timely filed its notice of appeal.

## DISCUSSION

In its sole issue on appeal, the State argues that the trial court erred in granting the motion to quash the third indictment. The State asserts that the limitations period was tolled due to the pendency of the original indictment because both indictments alleged the same conduct, same act, or same transaction such that West was on notice from the original indictment as to the substance of the third indictment. West argues to the contrary, that is, that the limitations period could not have been tolled here because the indictments did not allege the same conduct, act, or transaction, and thereby failed to afford him adequate notice to perform an appropriate investigation that would be necessary to preserve essential facts and witnesses for his defense against the newer indictment.

### *Standard of Review*

Whether an indictment is barred by the statute of limitations is a question of law subject to *de novo* review. *See Martinez v. State*, 527 S.W.3d 310, 322 (Tex. App.—Corpus Christi 2017, pet. ref'd); *Brice v. State*, No. 14-13-00935-CR, 2015 WL 545557, at *1 (Tex. App.—Houston [14th Dist.] Feb. 10, 2015, no pet.) (mem. op., not designated for publication).

### *Applicable Law*

#### The Statute of Limitations and Tolling

The first indictment charged West with third-degree violations of Texas Health and Safety Code section 481.129. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.129(a)(5)(A), (d)(2) (providing that the offense of knowingly possessing or attempting to possess a controlled substance

3

by misrepresentation, fraud, forgery, deception, or subterfuge, is a third-degree felony if the controlled substance is listed in Schedule III or IV); TEX. HEALTH & SAFETY CODE ANN. §§ 481.002(3), 481.032(a) (providing that the commissioner of state health services shall establish and modify the Schedules of controlled substances); Schedules of Controlled Substances, 44 TEX. REG. 2514, 2524 (2019) (designating tramadol as a Schedule IV controlled substance). The third indictment charged West with second-degree felony violations of the same statute. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.129(a)(5)(A), (d)(1) (providing that the offense of knowingly possessing or attempting to possess a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge, is a second-degree felony if the controlled substance is listed in Schedule I or II); TEX. HEALTH & SAFETY CODE ANN. §§ 481.002(3), 481.032(a); Schedules of Controlled Substances, 44 TEX. REG. 2514, 2519 (2019) (designating oxycodone as a Schedule II controlled substance). The statute of limitations for both sets of these violations is three years. TEX. CODE CRIM. PROC. ANN. art. 12.01(8).

However, the time during the pendency of an indictment shall not be computed in the period of limitation. TEX. CODE CRIM. PROC. ANN. art. 12.05(b). The term "during the pendency," means the period beginning with the day the indictment is filed in a court of competent jurisdiction and ending with the day such accusation is, by an order of a trial court having jurisdiction thereof, determined to be invalid for any reason. TEX. CODE CRIM. PROC. ANN. art. 12.05(c).

### *Hernandez's* "Same Conduct, Same Act, or Same Transaction" Rule

In *Hernandez v. State*, the Court of Criminal Appeals announced the rule that a prior indictment tolls the statute of limitations under article 12.05(b) of the Code of Criminal Procedure for a subsequent indictment when both indictments allege "the same conduct, same act, or same

transaction." 127 S.W.3d at 774. In *Hernandez*, the Court addressed a situation where the defendant was first indicted for possession of 4 to 400 grams of amphetamine committed on July 19, 1997, and subsequently indicted for possession of 4 to 200 grams of methamphetamine committed on the same day. *Id*. at 769, 774. In considering whether the prior indictment could toll the limitations period for the subsequent indictment, the Court observed that allowing a prior indictment to toll the statute of limitations would not defeat the purposes of a limitations period if a prior indictment gave adequate notice of the substance of a subsequent indictment. *Id*. at 772. The Court reasoned that a defendant can preserve those facts that are essential to his defense if he has adequate notice of a charge. *Id*. Although the Court recited the underlying facts of the offense committed by the defendant in its case, the Court restricted its brief analysis to the face of the indictments in reasoning as follows: "Both charges rest on essentially the same proof: the appellant possessed a controlled substance. Although the proof involved in identifying the drug would be slightly different, every other element would rest on the same proof." *See id*. at 774. Ultimately, *Hernandez* held that the prior and subsequent indictments alleged the same conduct and that article 12.05(b) tolled the limitations period during the pendency of the prior indictment. *Id*. at 774.

The Court of Criminal Appeals revisited its "same conduct, same act, or same transaction" rule in a 5-to-4 opinion, with four Judges dissenting, in *Marks v. State*, 560 S.W.3d 169, 169-70 (Tex. Crim. App. 2018). The *Marks* Court addressed a situation where the defendant was first indicted in three cases occurring on three different dates for acting as a guard company, by providing security services, without a proper business license and where the indictment was subsequently amended to charge the defendant for accepting employment as a security officer to carry a firearm without a security officer commission on the same dates as previously alleged. *Id*.

5

at 170. In holding that the indictments did not comply with the rule set out in *Hernandez*, the Court appeared to reason that the gravamen of the law-offending conduct for each of the charged offenses would not necessarily intertwine with the gravamen of the other during the commission of either charged offenses—even if the offenses involved some of the same underlying facts—as the Court illustrated as follows:

> Under the amended indictments, Appellant did not even need to actually provide security services–the act alleged in the original indictments. And to provide security services under the original indictments, Appellant need not have carried a firearm or entered into any agreement to do so.
>
> There are some common requirements for obtaining a security services license and a security office commission, but a security officer commission, which allows the carrying of a firearm, involves some extra requirements. Suppose a defendant *did* have a license to be in the guard company business and was facing one of these original indictments accusing him of not having such a license. What would make him think that the State was accusing him of (or that he needed to defend against) the allegation that he carried or agreed to carry a firearm without having been personally commissioned to do so?

*See id*. at 171 [internal footnotes omitted]. The Court also noted that the initial indictment's lack of any additional, specific facts in its allegations and its use of the "on or about" language made it less clear that the same transaction was being alleged in the amended indictment. *Id*. at 171. Ultimately, the Court held that the initial indictment did not toll the limitations period for the offenses alleged in the subsequently amended indictment. *Id*.

In applying the "same conduct, same act, or same transaction" rule from *Hernandez*, our sister courts have observed that the touchstone of the analysis is notice, that is, whether the original indictment fairly alerted the defendant to the subsequent charges against him and the time period at issue. *See Lenox v. State*, Nos. 05-10-00618-CR, 05-10-00619-CR, 2011 WL 3480973, at *9 (Tex. App.—Dallas Aug. 9, 2011, pet. ref'd) (not designated for publication); *Ex parte Brooks*,

6

No. 12-06-00378-CR, 2011 WL 165446, at *5 (Tex. App.—Tyler Jan. 19, 2011, pet. ref'd) (mem. op., not designated for publication). And our sister courts have held that fair notice is given if the prior and subsequent indictments share the same factual basis. *See Ahmad v. State*, 295 S.W.3d 731, 741 (Tex. App.—Fort Worth 2009, pet. ref'd) ("Two indictments arise from the same conduct if they arise from the same underlying event or incident."); *Lenox*, 2011 WL 3480973, at *9-10 (equating "same conduct, act, or transaction" to "same factual basis"); *Ex parte Brooks*, 2011 WL 165446, at *6 (holding that the defendant was on notice to preserve any facts or defenses available to her for any thefts she committed against the individual named in the indictment where the two indictments shared a factual basis).

*Application*

In this instance, the State's argument on appeal boils down to this: "Just as in *Hernandez*, the original and third indictments both rested on essentially the same proof – that [West] possessed or attempted to possess a controlled substance. The only difference was the proof in identifying the type of controlled substance, and this difference did not concern the *Hernandez* Court." West argues that *Hernandez* is distinguishable for multiple reasons: "since the [first indictment] alleged [an] attempt through many possible means, since it mirrored the statutory language and used 'on or about' dates, the particular controlled substance alleged in the [first indictment] is the only thing that provided adequate notice to [West]. A change to the pled controlled substance constitutes a fundamental change to the allegations."

Like West, we observe that the charged offenses within the indictments at issue here differ from those in *Hernandez*, first, because they allege not just possession but attempted possession through misrepresentation, fraud, forgery, deception, or subterfuge, and, second, because they

7

allege three separate on or about dates for commission of the offenses. *Compare Hernandez*, 127 S.W.3d at 769, 774 (addressing two indictments alleging only a possessory offense on a singular date). These differences could theoretically allow for greater permutations in the combination of facts constituting the particular actions committed by West that the State would then assert would show that he had run afoul of the law. Aside from those concerns, West also argued in the trial court that the increase in the penalty range for the possession or attempted possession of oxycodone as compared to tramadol was a relevant factor in assessing whether the two indictments alleged the same conduct. But we dispatch with that separate concern because the tolling test is based on the factual bases of the allegations, rather than any increase in the penalty range, and an increase in the penalty range through a subsequent indictment is not the type of amendment that impermissibly broadens or substantially amends the original indictment. *See Lenox*, 2011 WL 3480973, at *9-10; *Ex parte Brooks*, 2011 WL 165446, at *5-6.

Ultimately, we are unable to agree with West that these differences effectively preclude the first indictment here from giving sufficient notice to alert him to the subsequent charges in the third indictment. This case is too closely analogous to *Hernandez* for us to hold anything other than that the first and third indictments in this case alleged the same conduct. Even if West theoretically could have become liable under the third indictment for three entirely new and discrete actions previously ignored by the State, the first indictment still gave West sufficient notice that "fairly alerted" him that he could be held accountable for a specific umbrella of conduct in order for him to contemplate preserving facts that might be essential to his defense. *See Lenox*, 2011 WL 3480973, at *9; *Hernandez*, 127 S.W.3d at 772 (cases observing that the touchstone of notice considers whether the original indictment fairly alerted the defendant to the subsequent

8

charges against him and the time period at issue); *see also Ex parte Brooks*, 2011 WL 165446, at *4 ("[T]he difference between these indictments is that the first indictment charged Appellant with one of any of the thefts that she may have committed from the named individual (with the upward bound of $100,000), and the second indictment charged her with every theft she committed from that person pursuant to a scheme or continuing course of conduct. Accordingly, Appellant was on notice that she could be held accountable for conduct, specifically any thefts she committed . . . .").

Essentially, we believe that along the spectrum of cases between *Hernandez* and *Marks*, our situation here more closely resembles that of *Hernandez*. Relying heavily on *Marks*, West argues that the focus is on "whether the defense counsel's investigation into the allegations of the initial indictment – guided by the defense theory to those allegations – would *necessarily* translate into defenses to the allegations of the subsequent indictment." However, in proposing that *Marks* announced a rule requiring that a prior and subsequent indictment must necessarily require defense counsel to prepare the same defense, is a reading of *Marks* that stretches too far. We perceive that the reasoning behind the result in *Marks* may appear to be problematic in application to other cases, as evidenced by the four dissenting Judges in that case. But we think the illustration used by the Court in *Marks* to explain its rationale confined the application of its case to those cases in which the gravamen of law-offending conduct for the charges within a prior and subsequent indictment could never intertwine. In *Marks*, the gravamen of law-offending conduct for the charges under the first indictment amounted to an allegation of providing unlicensed security services, whereas the gravamen under the second indictment amounted to an allegation of carrying a firearm without the proper commission. *See Marks*, 560 S.W.3d at 171. Here, in contrast, the gravamen of law-

9

offending conduct for the charges in the first and third indictments are the same: possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge. We thus find *Marks* distinguishable from the present case.

Therefore, we hold that the first and third indictments here alleged the same conduct because the allegations shared the same factual basis and thereby "fairly alerted" West to the need to preserve any essential defensive facts where: (1) the prior indictment alleged three counts of knowingly possessing or attempting to possess a controlled substance, to-wit: tramadol, by misrepresentation, fraud, forgery, deception, or subterfuge, on or about the dates of January 21, 2015, April 2, 2015, and June 5, 2015, for each count, respectively; and (2) the subsequent indictment charged the same conduct but merely changed the controlled substance from tramadol to oxycodone. *See Hernandez*, 127 S.W.3d at 769, 774; *see also, e.g.*, *Ex parte Brooks*, 2011 WL 165446, at *1, 3-4, 6 (holding that the two indictments at issue covered the same conduct, act, or transaction and thereby shared a factual basis that put the defendant on sufficient notice to preserve any facts or defenses available to her where the first indictment alleged a theft in the amount of more than $20,000, but less than $100,000, between July 1, 1998, and April 1, 2000, from a single individual and where the second indictment alleged a theft, or thefts committed as part of a continuing course of conduct, with an aggregate amount of between $20,000, and $100,000, from the same individual and within a timeframe two months narrower); *Ahmad*, 295 S.W.3d at 742 (holding that the first indictment alleging that the defendant buried a training bomb on January 26, 2002, arose from the same conduct as the second indictment alleging that the defendant made a false report about a bomb and possessed a hoax bomb on the same date because "the offenses all arose from the same conduct: Appellant's possession of and report about some kind of bomb–

10

hoax, training, or unspecified–on January 26, 2002."); *compare Ex parte Martin*, 159 S.W.3d 262, 265 (Tex. App.—Beaumont 2005, pet. ref'd) (holding that "the factual basis is clearly not the same for the two indictments" and thereby did not toll the limitations period where the first indictment charged the defendant with aggravated robbery committed sometime before September 30, 1998, and where the second indictment charged the defendant with bail jumping committed on May 22, 2001, based upon the defendant's failure to appear for his trial on May 21, 2001, for the aggravated robbery charge).

Based on our holding that the first and third indictments alleged the same conduct as established by the reasoning of *Hernandez*, we conclude that the statute of limitations was tolled during the pendency of the first indictment from the date of its filing on September 13, 2016, to the date of its dismissal on June 13, 2018. *See* TEX. CODE CRIM. PROC. ANN. art. 12.05(b), (c); *Hernandez*, 127 S.W.3d at 774. Excluding this period during which the statute of limitations was tolled, we determine that approximately one year and ten months had expired from the time of count 1's alleged date of January 21, 2015, to the date the State filed its third indictment on June 26, 2018, that approximately one year and seven months had expired from the time of count 2's alleged date of April 2, 2015 to the date the State filed the third indictment, and that approximately one year and five months had expired from the time of count 3's alleged date of June 5, 2015, to the date the State filed the third indictment. Thus, we conclude that all three counts of the third indictment fell well within the three-year statute of limitations for the charged offenses. *See* TEX. CODE CRIM. PROC. ANN. art. 12.01(8); *see also* TEX. HEALTH & SAFETY CODE ANN. §§ 481.129(a)(5)(A), (d)(1), 481.002(3), 481.032(a); 44 TEX. REG. 2519 (2019).

Because the third indictment was timely filed based on the first indictment's tolling of the

limitations period, we conclude that the trial court erred in granting West's motion to quash the third indictment on the basis that the statute of limitations had expired. We therefore sustain the State's sole issue presented for review.

## CONCLUSION

Having sustained the State's sole issue, we reverse the judgment of the trial court, set aside the trial court's order granting the motion to quash, and remand the case for further proceedings.


GINA M. PALAFOX, Justice

February 14, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Publish)

12